# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 160 | **DATE** | 12/18/2002 |
| **CASE TITLE** | Cont Casualty Co vs. Marsh | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the attached memorandum opinion and order, defendants' motion to dismiss Marsh for lack of personal jurisdiction [42-1] is granted. Continental's motion to compel the deposition of Marsh [40-1] is denied, as is its motion for sanctions [40-2]. However, Continental may depose Marsh upon proper subpoena.

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | 40 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| cav | courtroom deputy's initials | 02 DEC 20 PM 3:18 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONTINENTAL CASUALTY CO., )
)
          Plaintiff, )
)
vs. )   Case No. 01 C 0160
)
DARREN MARSH, WYCON CORP., and )
BRITAMCO UNDERWRITERS, INC., )
)
          Defendants. )

DOCKETED
DEC 23 2002

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Plaintiff Continental Casualty Co. ("Continental") filed suit against defendants Britamco Underwriters, Inc. ("Britamco"), Wycon Corp.[1] and Darren Marsh alleging that they owe Continental more than $3.6 million in financed premiums that were misappropriated by North American Trucking Association, Inc. ("NATA"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This matter is now before the Court on Continental's motion to compel the deposition of defendant Marsh and motion for sanctions, and defendants' motion to dismiss Marsh from the case due to lack of personal jurisdiction. For the reasons set forth below, defendants' motion is granted and Continental's motions are both denied.

---

[1]     Wycon Corp. has been dissolved.

## BACKGROUND

Continental is the assignee of all claims formerly held by its insured, Transamerica Insurance Finance Corporation ("TIFCO"). Cmplt. ¶7. In or about January 1996, NATA approached TIFCO and proposed that TIFCO finance insurance premiums for a master insurance policy issued by Britamco covering physical damage to property owned or leased by truckers who were members of NATA. *Id.* ¶8. On January 15, 1996, Marsh, Britamco's vice president, signed an Authorization Agreement from TIFCO indicating that NATA was authorized to collect premiums on behalf of Britamco. Two days later, TIFCO accepted the Premium Finance Agreement offered by NATA and, based on the representations in the Authorization Agreement, sent NATA certain premium funds. *Id.* ¶¶9-10, 34. NATA is alleged to have misappropriated more than $3.6 million of those premium funds rather than forwarding them to Britamco, which prompted TIFCO – under power of attorney from NATA – to cancel the master insurance policy. *Id.* ¶¶13-14. Continental claims that Britamco, its exchange broker Wycon, and its now former vice president Marsh are liable for repaying those funds.

Continental initially filed suit against Britamco only in the Circuit Court of Cook County. Approximately three years later on January 9, 2001, Continental filed a second lawsuit in federal court seeking to recover its premium funds from Wycon and Marsh in addition to Britamco. Defendants moved to dismiss or stay the action pursuant to the federal abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because a parallel action was already pending in state court. The district court denied the motion to dismiss but entered a stay that remained in effect until February 1, 2002. Shortly thereafter, Continental voluntarily dismissed its state court action.

On February 28, 2002, defendants answered the complaint and asserted several affirmative defenses including lack of personal jurisdiction. On May 21, 2002, Continental moved to strike defendants' affirmative defenses and sought judgment on the pleadings as to certain of those defenses. On June 13, 2002, Continental also filed motions to compel the deposition of Marsh and for sanctions. One week later, defendants moved to dismiss Marsh under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. On July 25, 2002, this Court directed Continental to depose Marsh on issues of personal jurisdiction and instructed the parties to submit supplemental briefs addressing whether jurisdiction was proper under the Illinois long-arm statute, federal due process factors and the fiduciary shield doctrine. Shortly thereafter on August 1, 2002, the Court denied Continental's motion to strike as premature and also denied its motion for judgment on the pleadings. The only issues remaining before the Court are defendants' motion to dismiss and Continental's motions to compel and for sanctions.

## DISCUSSION

Fed. R. Civ. P. 12(b)(2) provides that an action should be dismissed against a party over whom the court lacks jurisdiction. The plaintiff bears the burden of providing sufficient evidence to establish that personal jurisdiction exists. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In ruling on a motion to dismiss for lack of personal jurisdiction, the court resolves factual disputes in the pleadings and affidavits in favor of the plaintiff, but takes as true any unrefuted facts contained in defendants' affidavits. *Id.* at 1275.

A.  Waiver

Continental first argues that defendants have waived the defense of lack of personal jurisdiction because they failed to raise it in their motion to dismiss or to stay the proceedings

back in February 2001. Fed. R. Civ. P. 12(h)(1) provides that the defense of lack of personal jurisdiction is waived "(A) if omitted from a motion in the circumstances described in subdivision (g), . . ." Subdivision (g) provides that "[i]f a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party . . . the party shall not thereafter make a motion based on the defense or objection so omitted." *See Berol Corp. v. BIC Corp.*, No. 02 C 0559, 2002 WL 1466829, at *1 (N.D. Ill. July 8, 2002) (under Rule 12(g) "all Rule 12 defenses must be consolidated in one motion, and the failure to raise a defense available at the time the initial motion is raised acts as a waiver of the defense under Rule 12(h)(1)"). Continental claims that defendants waived the jurisdiction defense by failing to raise it in the Rule 12(b) motion to dismiss or to stay the proceedings. Pl. Mot., p. 3; Pl. Mem., pp. 1-2. Defendants argue that the motion to stay was not a Rule 12 motion at all and, thus, they timely raised the defense in their answer to the complaint.

Whether a motion to dismiss or stay proceedings based on the abstention doctrine constitutes a Rule 12 motion triggering waiver of any omitted defenses appears to be an issue of first impression in this circuit. Motions seeking abstention are not specifically enumerated in Rule 12, but courts frequently allow abstention challenges to be raised in a Rule 12(b)(1) motion asserting lack of subject matter jurisdiction, a Rule 12(b)(6) motion to dismiss for failure to state a claim, or both. *Carter v. Doyle*, 95 F. Supp. 2d 851, 855 n.8 (N.D. Ill. 2000). Nevertheless, such motions do not "fit neatly into one of the two types of jurisdictional attacks generally raised under Rule 12(b)(1) – the challenge is neither the facial insufficiency of the complaint or the factual basis pleaded in the complaint." *Id.*; *Lowery v. Schnorf*, No. 97 C 6688, 1998 WL 341835, at *3 (N.D. Ill. June 18, 1998). Nor do they technically seek dismissal for failure to state

4

a claim under Rule 12(b)(6). *See DVI Business Credit Corp. v. Crowder*, 193 F. Supp. 2d 1002, 1006 n.3 (S.D. Tex. 2002) (Rule 12(b)(6) "is not a vehicle for dismissal on abstention grounds").

The purpose of Rule 12(g) is to "prevent litigants from interposing defenses in a piecemeal fashion and eliminate unnecessary delay at the pleading stage." *Donnelli v. Peters Securities Co.*, No. 02 C 0691, 2002 WL 2003217, at *3 (N.D. Ill. Aug. 29, 2002). However, not every pre-answer motion falls under the ambit of Rule 12. *See, e.g., Carter v. Clark Material Handling Co.*, No. 97 C 4424, 1998 WL 89244, at *2 (N.D. Ill. Feb. 17, 1998) (motion to transfer venue, unlike motion to dismiss for improper venue, is not a Rule 12 motion and "may be filed at any time"); *D'Amico v. Treat*, 379 F. Supp. 1004, 1007-08 (N.D. Ill. 1974) (venue objection was not waived by filing an appearance and motion for enlargement of time to answer or otherwise plead).

The Court believes that a motion for abstention, however labeled, is not a Rule 12 motion for purposes of the Rule's waiver provisions. A motion for abstention seeks to have the court refrain from exercising jurisdiction during the pendency of a similar state court action based on principles of comity and federalism. *See Beres v. Village of Huntley, Illinois*, 824 F. Supp. 763, 766 (N.D. Ill. 1992). This is not a defense contemplated by Rule 12 and, thus, it does not give rise to a waiver under Rule 12(h). *See Aetna Life Insurance Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (motion to dismiss or stay proceedings pending resolution of state court action "did not seek relief provided under Rule 12(b) and hence was not subject to that Rule's restrictions"); *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 222 n.4 (D.N.J. 1992) ("motion to stay or dismiss a federal action due to a pending state action is not a Rule 12 motion and, therefore, a second motion to dismiss is not barred by Rule 12(g)"); *Manna v. Greenburgh*

*No. 11 School District*, 2 F. Supp. 2d 461, 463 n.1 (S.D.N.Y. 1998) (motion styled as Rule 12(b) motion to dismiss was actually motion for abstention, whether in the form of dismissal or a stay); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1360 (2d ed. 1990) (motion to stay or dismiss on abstention grounds not one of the defenses enumerated in Rule 12(b), but relying on their inherent power federal courts consider such motion to make most effective use of judicial resources and avoid deciding matters peculiarly suited to determination by state's tribunals).

Of course, parties may choose to raise Rule 12 defenses along with their abstention challenges and, as a result, may waive any unasserted defenses pursuant to Rule 12(g) and (h). *See, e.g., Ng v. Gate Pallet Systems, Inc.*, No. 94 C 1234, 1994 WL 329806, at * (N.D. Ill. July 8, 1994) (defendant waived venue objection to amended complaint by failing to raise it in its first motion to stay, compel arbitration or dismiss the original complaint; first motion included a Rule 12(b)(3) venue objection as to one count and additional venue objection could have been raised at that time); *Rauch v. Day & Night Manufacturing Corp.*, 576 F.2d 697 (6th Cir. 1978) (defendants waived personal jurisdiction defense by filing a prior motion to stay pending the outcome of a parallel state court action which also included a Rule 12(b)(6) statute of limitations defense). But such joinder is not required by Rule 12 and where, as here, the motion is strictly one for abstention, waiver does not apply.

Having determined that defendants timely asserted a personal jurisdiction defense in their answer to the complaint, the Court next considers whether it has jurisdiction over defendant Marsh.

## B. Personal Jurisdiction

In a case based on diversity of citizenship, a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction. *RAR*, 107 F.3d at 1275. In determining whether personal jurisdiction exists, the Court must examine (1) state statutory law; (2) state constitutional law; and (3) federal constitutional law. *Id.* at 1276.

### 1. Illinois Long-Arm Statute

The Illinois long-arm statute provides that an Illinois court "may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). "Because the Illinois statute authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries – one state and one federal." *RAR*, 107 F.3d at 1276. If jurisdiction is improper under the Illinois or United States Constitutions, then the court cannot exercise jurisdiction over the defendant. *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F. Supp. 2d 818, 821 (N.D. Ill. 1999).

### 2. Illinois Constitution

The Illinois Supreme Court has provided little guidance as to how state due process differs from federal due process in the personal jurisdiction context. It has, however, explained that "jurisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 565 N.E.2d 1302, 1316 (1990). In addition, Illinois recognizes a

7

fiduciary shield doctrine which prevents personal jurisdiction over an individual whose contacts with Illinois are solely the result of acts as a representative or fiduciary of a corporation. *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1146 (N.D. Ill. 2001). The Illinois Constitution's guarantees of due process are not necessarily the same as those provided by the federal Constitution, but with the exception of the fiduciary shield doctrine, the parties have not presented any evidence to suggest that the outcome would be different under Illinois as opposed to federal constitutional law. *See, e.g., Hyatt International Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) ("there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction"); *Kohler Co. v. Kohler International, Ltd.*, 196 F. Supp. 2d 690, 695-96 (N.D. Ill. 2002). Thus, the Court will proceed with an analysis of federal constitutional limits on jurisdiction.

### 3. Federal Due Process

The Due Process Clause of the Fourteenth Amendment limits when a state court may assert personal jurisdiction over a nonresident defendant. *RAR*, 107 F.3d at 1277. A defendant must have "certain minimum contacts with [the forum state]" such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). In this case, Continental claims that the Court has both specific and general jurisdiction over Marsh. Pl. Supp. Mem., p. 5. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). In specific jurisdiction cases, the court must determine whether the defendant "purposefully established

8

minimum contacts within the forum State" such that he "should reasonably anticipate being haled into court" in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 476 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The court considers whether minimum contacts exist and, if so, whether the exercise of personal jurisdiction is reasonable and fair under the circumstances. *Burger King*, 471 U.S. at 476-77; *Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.*, 42 F. Supp. 2d 821, 829 (N.D. Ill. 1999). In making this determination, the court must consider five factors: (1) the burden on the defendant of litigating in the forum; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental substantive policies. *Burger King*, 471 U.S. at 474-75.

General jurisdiction, on the other hand, "is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." *RAR*, 107 F.3d at 1277 (quoting *Helicopteros*, 466 U.S. at 416). In these cases, the court must look to the defendant's additional contacts with the forum state beyond those related to the pending lawsuit. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 n.6 (7th Cir. 1992). Those additional contacts must be intentional, substantial, and continuous, rather than inadvertent, trivial, or sporadic. *Asset Allocation and Management Co. v. Western Employers Insurance Co.*, 892 F.2d 566, 570 (7th Cir. 1989).

4. **Analysis**

Marsh is a Florida resident with no ties to Illinois other than the fact that he worked for Britamco, a Florida insurance company that issued policies through the Illinois Insurance

Exchange. He has never had an office, bank account, mailing address or telephone number in Illinois, and he has only been to Illinois once on a matter wholly unrelated to this case. Marsh Aff. ¶5; Marsh Dep., p. 43. Continental nonetheless claims that it has alleged sufficient facts to establish both specific and general jurisdiction over Marsh in his capacity as a former officer of Britamco. The Court disagrees.

With respect to specific jurisdiction, Marsh did issue a policy to NATA at a Chicago address and he signed documents relating to the policy that were captioned "Britamco Underwriters, Inc., Chicago, Illinois." However, Marsh conducted all negotiations and signed all documents in Florida. *Compare NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 581 (7th Cir. 1994) ("a defendant's participation in substantial preliminary negotiations conducted in the forum state leading to the contract in issue is a sufficient basis for personal jurisdiction"). Moreover, Continental is not disputing the terms of the insurance policy; rather, it is seeking to recover premium payments allegedly owed under TIFCO's Premium Finance Agreement with NATA. Specifically, Continental alleges that Marsh signed an Authorization Agreement that misrepresented NATA's authority to collect premiums on behalf of Britamco. Cmplt. ¶¶27, 34, 37. But TIFCO is a Maryland corporation, and there is no evidence that Marsh's activities with respect to that Authorization Agreement were directed to TIFCO in Illinois as opposed to Maryland. *Compare Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (California court had jurisdiction over nonresident defendants who "intentionally directed [libelous statements] at a California resident"); *Hyatt International Corp.*, 302 F.3d at 710 (finding personal jurisdiction over resident of Italy where there were "[f]lurries of faxes and phone calls between [defendant in] Milan and Chicago . . . and [defendant] even visited . . .

Chicago headquarters on one occasion in connection with the proposed deal"). In sum, there is nothing to suggest that Marsh would reasonably anticipate being haled into court in Illinois in regard to a financing agreement with a Maryland corporation.

Continental has also failed to establish that this Court has general jurisdiction over Marsh. Marsh is a former vice president of Britamco which was the largest syndicate on the Illinois Insurance Exchange, and a former director of Wycon, Britamco's exchange broker. Cmplt. ¶2. But this does not establish that Marsh, as opposed to Britamco, had any personal ties to Illinois. The mere fact that Marsh was an underwriter authorized to sign line slips on the Illinois Insurance Exchange is not sufficient to demonstrate that he personally had continuous and systematic general business contacts with Illinois. Indeed, Marsh worked for two Florida corporations with their principal places of business in Coral Springs, Florida, and he conducted all of his business in Florida. Cmplt. ¶¶3-4; Amended Answer ¶¶3-4. Moreover, there is no evidence that Marsh issued any other policies to insureds in Illinois. *Compare Banwell v. Illinois College of Optometry*, 981 F. Supp. 1137, 1143 (N.D. Ill. 1997) (asserting personal jurisdiction over nonresident officer of Illinois corporation); *Brujis v. Shaw*, 876 F. Supp. 975, 980 (N.D. Ill. 1995) (defendant subject to personal jurisdiction due to his "position as director of an Illinois corporation").

Nor is the Court persuaded by Continental's argument that jurisdiction exists because Marsh signed discovery responses in the state court proceedings stating that he was acting "under penalty of perjury under the laws of the state of Illinois." Pl. Supp. Mem., pp. 4-5; Pl. Supp. Reply, pp. 3-4. Marsh was not personally named in that lawsuit so his affidavit does not demonstrate his consent to this Court's jurisdiction. Similarly, Marsh's testimony that he has no

11

preference as to where he is sued is not alone sufficient to justify haling him into court in Illinois in the absence of evidence that he has minimum contacts with the state.

Even if Marsh did have sufficient minimum contacts with Illinois as an officer of Britamco and director of Wycon to satisfy due process requirements, he would nonetheless be protected by the fiduciary shield doctrine. As noted, this doctrine recognizes that corporate officers, directors and shareholders are separate and distinct from the corporation and prevents personal jurisdiction over an individual whose only contacts with Illinois are in his capacity as a corporate fiduciary. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (doctrine "denies personal jurisdiction over an individual whose presence and activity in the state . . . were solely on behalf of his employer or other principal"); *Kula v. J.K. Schofield & Co.*, 668 F. Supp. 1126, 1129 (N.D. Ill. 1987). In this case, Marsh's only contacts with Illinois were in his role as a fiduciary of Britamco and Wycon. Continental argues that the doctrine does not apply because Marsh was a high-ranking company officer with "substantial discretionary authority." Pl. Resp., p. 7; *Jones. v. Sabis Educational Systems, Inc.*, 52 F. Supp. 2d 868, 883 (N.D. Ill. 1999) (shield is removed if individual was motivated by personal interests and acted with discretion). However, he was not a shareholder and had no financial stake in the company's health. *See Plastic Film Corp. of America*, 128 F. Supp. 2d at 1147 ("[t]he determinative factor is the individual's status as a shareholder, not merely as an officer or director"). Nor is there any allegation that "the corporation was a mere shell utilized by [Marsh] for his own personal benefit." *YKK USA, Inc. v. Baron*, 976 F. Supp. 743, 747 (N.D. Ill. 1997). On these facts, it would not be fair to require Marsh to personally defend this action in Illinois. *Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F. Supp. 766, 769 (N.D. Ill. 1998) (no jurisdiction over individual corporate officer where plaintiff

12

did not provide the court with "any equitable reasons for why this Court should disregard the corporate entity").

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss Marsh for lack of personal jurisdiction (Docket Entry #42-1) is granted. Continental's motion to compel the deposition of Marsh (Docket Entry #40-1) is denied, as is its motion for sanctions (Docket Entry #40-2). However, Continental may depose Marsh upon proper subpoena.

Nan R. Nolan<br>
NAN R. NOLAN<br>
United States Magistrate Judge

Dated: December 18, 2002