# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 160 | **DATE** | 1/5/2004 |
| **CASE TITLE** | Continental Casualty Co. vs. Darren Marsh, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Britamco's motion to compel [82-1] is granted in part and denied in part. Continental Casualty has 14 days from the date of this order to produce documents in accordance with the rulings delineated in this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 0 6 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 86 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 12/31/2003 date mailed notice | |
| hmb courtroom deputy's initials | | '04 JAN -6 AM 4:45 Date/time received in Central Clerk's Office | hmb mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 01 C 0160 |
| | ) | |
| DARREN MARSH, WYCON CORP., and | ) | |
| BRITAMCO UNDERWRITERS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

JAN 0 6 2004

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Before the court is the motion of defendant Britamco Underwriters, Inc. ("Britamco") to compel production of documents that plaintiff Continental Casualty Co. ("Continental") withheld from production on privilege grounds. The documents at issue are identified as documents 1, 2, 4, 6-20, 22-26 and 28-33. Continental contends that, with the exception of document 14, those documents are privileged attorney-client communications. Additionally, Continental asserts that both documents 14 and 15 are protected attorney work product. Britamco challenges Continental's privilege assertions. As explained below, the motion to compel is granted in part and denied in part.

## I. Background

This case involves a commercial loan transaction involving financing for insurance premiums. Continental is the assignee of all claims formerly held by its insured, Transamerica Insurance Finance Corporation ("TIFCO"). In or about January 1996, North American Trucking

Association ("NATA") sought financing from TIFCO for the insurance premiums for a master insurance policy issued by Britamco covering physical damage to property owned or leased by truckers who were members of NATA. (Compl. ¶ 8.) On January 15, 1996, Darren Marsh, Britamco's vice president, signed an Authorization Agreement indicating that NATA was authorized to collect premiums on behalf of Britamco. Two days later, TIFCO accepted the Premium Finance Agreement offered by NATA and, based on the representations in the Authorization Agreement, sent NATA certain premium funds. (*Id.* ¶¶ 9-10, 34.) NATA allegedly misappropriated more than $3.6 million of those premium funds rather than forwarding them to Britamco, which prompted TIFCO—under power of attorney from NATA—to cancel the master insurance policy. (*Id.* ¶¶ 13-14.)

When TIFCO subsequently filed an insurance claim under a fidelity bond issued by Continental, Continental engaged the law firm of Peterson & Ross to investigate TIFCO's fidelity bond claim. Meanwhile, TIFCO sued NATA in Kentucky state court (a lawsuit which evidently later settled). Continental eventually settled the fidelity bond claim by paying TIFCO $1,857,071.80 on November 22, 1996, and $47,621.60 on March 31, 1997, for a total of $1,904,693.40. (*Id.* ¶ 16.) Continental, as assignee, later commenced this lawsuit, in which it seeks to recover from Britamco the funds NATA allegedly misappropriated.

II.  Analysis

  A.  Attorney-Client Communications

Because jurisdiction in this matter is based on diversity of citizenship, state law governs the scope of the attorney-client privilege. *Chicago Meat Processors, Inc. v. Mid-Century Ins. Co.*, No. 95 C 4277, 1996 WL 172148, at *2 (N.D. Ill. Apr. 10, 1996). The court thus considers

Illinois law. *See Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 404 (N.D. Ill. 2001). As a general rule, the attorney-client privilege applies under Illinois law if there is a showing that the communication "originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 257 (Ill. 1982). However, as both parties agree, in insurance cases there is an exception to that general rule.

> In the insurance context, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply.... The public policy issue behind this result is that insurance companies, which are in the business of reviewing, processing, and adjusting claims, should not be permitted to insulate the factual findings of a claims investigation by the involvement of an attorney to perform such work.

*Chicago Meat Processors*, 1996 WL 172148, at *3 (internal citations omitted). Continental, as the party asserting the privilege, bears the burden of presenting facts showing the privilege is applicable to a given communication. *Consolidation Coal*, 432 N.E.2d at 257. In an effort to meet its burden, Continental provided a written explanation regarding its invocation of privilege for each document and produced all of the disputed documents for *in camera* review.

For each of the documents withheld (in whole or in part) on attorney-client privilege grounds, the critical question is whether Peterson & Ross was acting as a "claims adjuster, claims process supervisor, or claim investigation monitor," rather than as a legal adviser, at the time of the communication. *Chicago Meat Processors*, 1996 WL 172148, at *3; *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991); *see also Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 135, 138 (N.D. Ill. 1993) ("the key test is whether the communications

3

reflect legal advice given by a legal advisor acting in that capacity"). The court therefore analyzes each document for which Continental has asserted attorney-client privilege with that question in mind.

### 1. Rulings Regarding Fidelity Claim Reports

Documents 1, 6, 9-10, 16, 26 and 29 are seven Fidelity Claim Reports written by attorney Charles Thomas of Peterson & Ross between March 29, 1996 and December 11, 1996, directed to CNA Insurance Companies ("CNA").[1] Continental produced each of these reports in redacted form, asserting the attorney-client privilege for the redacted portions. Britamco challenges those privilege assertions. The court will address the redacted Fidelity Claim Reports in chronological order.

Document 29 is Claim Report number 1, dated March 29, 1996. Continental redacted three sections from that report: the matter summary, current status, and coverage discussions. The matter summary section, as characterized by Continental, is "an attorney-client communication of attorney selected 'quick glance summary data' taken from the aggregate whole of the produced fidelity bond policy[.]" (Mem. Resp. Mot. Compel, Ex. A at 8.) Although Continental claims this information is integral to the legal advice rendered regarding the claim, the court disagrees. The matter summary, which includes facts such as the name of the insured, the policy type, liability limit, deductible amount, etc., is information any claims investigator would have. Accordingly, the court finds this information related to Thomas' role as claims investigator, not legal advisor. The matter summary section is therefore not privileged and must

---

[1] Neither party has explained the relationship between CNA and Continental. CNA appears to be the parent company, whereas Continental was the entity that actually issued the fidelity bond to TIFCO, and settled the claim.

4

be produced.

The current status section analyzes "selected developments" in the Kentucky state court litigation between TIFCO and NATA. Continental claims this is a privileged attorney-client communication reflecting legal strategy regarding that litigation. But neither CNA nor Thomas were involved in the Kentucky litigation—Peterson & Ross was merely monitoring that litigation because it related to TIFCO's fidelity bond claim. "[T]here is a difference between merely providing legal information and providing legal 'advice'." *Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1367 (N.D. Ill. 1995). Nothing in the current status section of this report communicates legal advice or legal strategy. The section simply conveys information regarding the progress of the lawsuit between TIFCO and NATA. The court finds this section relates to Thomas' role as claims investigator/claims process monitor, and thus finds the privilege inapplicable. The current status section must be produced.

The coverage discussion section, on the other hand, seems related to Thomas' role as both legal advisor and claims investigator, and further, seems inextricably intertwined. The coverage discussion is privileged and thus need not be produced.

Document 26 is Claim Report Number 2, dated May 3, 1996. Document 16 is Claim Report Number 3, dated June 20, 1996. In both of these reports, the same three sections were redacted from this report as were redacted from the first claim report: the matter summary, current status, and coverage discussions. For the reasons explained above, the matter summary sections are not privileged, and thus must be produced. Nor are the current status sections privileged. As with the earlier report, these sections merely discuss developments in the Kentucky state court litigation, and implications for Peterson & Ross's investigation into the

fidelity bond claim. The coverage discussion sections are privileged, however, for the same reasons discussed above.

Document 10 is Fidelity Claim Report Number 4, dated August 23, 1996. In this report, the matter summary, current status (including subsections addressing developments in litigation, investigation of premium financing arrangements, and a possible interview with Britamco employee Darren Marsh), and coverage discussion sections were redacted. Again, the matter summary is not privileged and thus must be produced. The subsection regarding developments in litigation is also not privileged because it communicates information about the Kentucky state court lawsuit, but not legal advice. Nor is the subsection regarding an interview with Britamco employee Darren Marsh privileged. Attempting to interview Marsh relates to Peterson & Ross's role as claim investigator, not legal advisor. The subsection regarding investigation of premium financing arrangements, on the other hand, conveys both legal analysis as well as facts relevant to the claim investigation. The court finds this section relates to the law firm's role as both legal advisor and claims investigator, and further concludes that the facts and analysis are too intertwined to make redaction possible. This subsection is privileged and need not be produced. Similarly, the coverage discussion section, like its predecessors in the earlier reports, is privileged and need not be produced.

Documents 6 is Fidelity Claim Report Number 5, dated October 4, 1996, together with an email from Joseph Lindsay at CNA to Bill Jennings at CNA dated September 27, 1996. Document 9 is another copy of Fidelity Claim Report Number 5. Regarding the email, the first paragraph is not privileged. That paragraph addresses (1) the transmittal of Claim Report Number 5, and (2) an expense reserve. Transmittal letters are not privileged. Likewise, the

reference in the email to an expense reserve is not privileged. *Allendale*, 152 F.R.D. at 138 ("insurance reserves are the regular business of insurance companies, not a part of legal advice"); *see also Old Second Nat'l Bank of Aurora v. Commercial Union Midwest Ins. Co.*, No. 99 C 3941, 1999 WL 106835, at *3 (N.D. Ill. Nov. 18, 1999). The second paragraph of the email, however, relates to legal advice CNA sought from Peterson & Ross regarding potential litigation against Britamco, and thus is privileged. The email in Document 6 must be produced with the second paragraph redacted.

As for Fidelity Claim Report Number 5 (both Documents 6 and 9), the following five sections were redacted: the matter summary, current status (including subsections for developments in litigation, settlement with NATA, and discussions with TIFCO), coverage discussions, salvage, and monitoring. For the reasons explained above, the coverage discussions section is privileged whereas the matter summary section is not.

As for the current status section, the subsection regarding developments in the Kentucky litigation is not privileged because it reflects no legal advice, it simply provides an update regarding the state court proceedings between TIFCO and NATA. The subsection regarding settlement with NATA, on the other hand, is partially privileged. The text on pages 4-5 of the report, beginning with "In response" and ending with the amount of the "remaining claim," is not privileged. Rather, that text reflects facts that relate to TIFCO's settlement with NATA and Peterson & Ross's role as claims investigator. However, the next three paragraphs on page 5—beginning with "Transamerica's" and ending with "completed"—relate to Peterson & Ross's role as both legal advisor and claims investigator. Because the issues and roles overlap, making partial redaction impractical, that text is deemed privileged and should be fully redacted. The

7

final paragraph in that subsection—beginning with "Britamco" and ending with "agreement"—is not privileged. That text simply conveys information regarding the terms of the settlement of the state court litigation between TIFCO and NATA, which is information about a legal proceeding but not legal advice.

The last subsection in the current status section, which relates to discussions with TIFCO, is not a privileged attorney-client communication either. That subsection summarizes relevant facts relating to TIFCO's fidelity bond claim, as well as TIFCO's counsel's stated reasons why TIFCO's loss should be covered by the fidelity bond policy. The summary reflects *TIFCO's* assessment of its claim, not Peterson & Ross's assessment. This subsection is not privileged—it relates to Peterson & Ross's role as claims investigator and reflects no legal advice. As a result, this subsection must be produced.

That leaves the salvage section and the monitoring section. The salvage section conveys legal advice and strategy regarding potential litigation against parties other than NATA. That section is privileged, and was properly redacted from the versions of Fidelity Claim Report Number 5 that Continental produced. The monitoring section, on the other hand, merely relates to an insurance reserve for attorney's fees, which is not privileged. *See Allendale*, 152 F.R.D. at 138; *Old Second Nat'l Bank*, 1999 WL 106835, at *3. The monitoring section should not have been redacted.

Document 1—the last of the claim reports at issue here—is Fidelity Claim Report Number 6, dated December 11, 1996. As with Document 6 and 9, Continental redacted the matter summary, current status (including subsections addressing developments in the litigation, settlement with NATA, and settlement with the insured), coverage discussions, salvage, and

monitoring. For the reasons explained above, the matter summary section and monitoring section are not privileged and should not have been redacted, but redaction of the coverage discussions section and salvage section was proper.

That leaves the subsections within the current status section. As with the earlier versions of the Fidelity Claim Report, the developments-in-litigation subsection is not privileged. Likewise, in this particular version, the subsection regarding the settlement with NATA reflects no legal advice. This subsection relates to Peterson & Ross's role as claims investigator, and thus must be produced. The subsection regarding settlement with the insured, on the other hand, implicates Peterson & Ross's role as both legal advisor and claims investigator. Specifically, the subsection includes legal advice regarding CNA's rights based on its settlement with TIFCO. Redaction would be too cumbersome. Further, it appears that any unprivileged information in that section, such as the amount paid to TIFCO in settlement of its fidelity bond claim, is information Britamco already has. The court therefore finds that Continental's redaction of this subsection was proper.

### 2. Rulings Regarding Documents 2, 4, 7-8, 11-13, 17-20, 23, 25, 28, 30-33[2]

Document 2 is a fax from Thomas to Bill Jennings of CNA, transmitted 11/22/96, regarding paying the settlement to TIFCO for its fidelity bond claim. The letter does not reflect legal advice. Rather, it simply sets forth certain facts regarding communications with Jack Carlson, director of claims and loss control for TIFCO, to facilitate payment of the settlement. It is within the ordinary course of an insurer's business to coordinate payment of settled claims.

---

[2] Document 15, a letter from Ehlers to Lindsay and Steven Kuuskvere of CNA dated July 8, 1996, is addressed in the work product section because Continental asserts both privileges for this document.

For this communication, Thomas appears to have been acting as a claims adjuster or claims process supervisor, not as a legal advisor. Document 2 must be produced because it is not a privileged attorney-client communication.

Documents 4 and 7, which are duplicates, are an email dated November 12, 1996 from Thomas to Joseph Lindsay of CNA regarding implementing the settlement with TIFCO. The first paragraph of the email does not reflect legal advice—it merely explains how the settlement money is to be paid. Thomas was acting as a claims adjuster or claims process supervisor, not as a legal adviser, for that communication. The second and third paragraphs of the email (beginning with "Jack" and ending in "week"), on the other hand, relate to Thomas' role as both legal advisor and claim investigator. Those paragraphs constitute a privileged communication, and should therefore be redacted.

Document 8 is an email dated 9/30/96 from attorney Dirk Ehlers at Peterson & Ross to Lindsay and Thomas, which Lindsay then forwarded to Jennings. The final sentence before "Best regards" relates to legal advice sought on a selected issue. That sentence is a privileged attorney-client communication which should be redacted. The remainder of the document, however, is not privileged because it reflects no legal advice. The document is primarily a transmittal email, and transmittal letters are not privileged. Nor is the reference in the email to the insurance reserve privileged. *Allendale*, 152 F.R.D. at 138; *Old Second Nat'l Bank*, 1999 WL 106835, at *3. Document 8 must be produced in redacted form.

Document 11 is a fax dated 8/22/96 from Lindsay to Thomas transmitting a fax from James Philcox at Sedgwick (CNA's underwriter) to Lindsay, and Lindsay's response to Philcox. The faxes relate to the underwriter's request for the Fidelity Claim Reports to include

10

conclusions and forward strategy. There is nothing privileged about the underlying communications between CNA and its underwriter, however. Nor does the fact that Lindsay transmitted those underlying communications between CNA and its underwriter to attorney Thomas make the communication privileged. Moreover, nothing in Lindsay's transmittal implicates a request for legal advice. Continental has failed to establish that Document 11 is a privileged attorney-client communication. As a result, Document 11 must be produced.

Document 12 is an email from Thomas to Lindsay dated 8/15/96. This email relates to legal advice regarding policy renewal and meeting with CNA's underwriters, and thus constitutes a privileged attorney-client communication.

Document 13 is an email from Lindsay to Thomas dated 8/14/96 seeking legal advice on policy renewal, coverage issues, and future legal recourse. This email is a privileged attorney-client communication.

Document 17 is a letter from Thomas to Lindsay dated 6/19/96 regarding establishing an expense reserve for the investigation into TIFCO's fidelity bond claim. Document 18 is an email from Lindsay to Thomas dated 6/12/96 on the same subject. As discussed earlier, communications regarding an insurance reserves for attorney's fees is not covered by the attorney-client privilege. *Allendale*, 152 F.R.D. at 138; *Old Second Nat'l Bank*, 1999 WL 106835, at *3. These documents are not privileged, and therefore must be produced.

Document 19 is a series of communications between Thomas of Peterson & Ross and Lindsay and Steven Kuuskvere of CNA relating to Thomas' request for the clients' feedback on a proposed letter from Thomas to TIFCO's attorney regarding TIFCO's fidelity bond claim. This communication between attorney and client regarding a proposed draft letter is privileged.

11

Document 20, a letter dated 6/6/96 from Thomas to Lindsay, is partially privileged. The first sentence is not privileged: it is simply a transmittal communication, forwarding certain TIFCO documents to CNA. The second sentence, which relates to a proposed communication between Thomas and CNA's attorney, is privileged, however. Document 20 must be produced in redacted form.

Document 22 is an email from Lindsay to Thomas and Kuuskvere dated 5/17/96. The first paragraph is privileged because it relates to a request for legal advice regarding the fidelity bond claim. The second paragraph is not privileged, but it also is not relevant to the present litigation. Document 22 need not be produced.

Document 23 is a letter dated 5/15/96 from Thomas to Lindsay, Jennings and Kuuskvere regarding the agenda for an upcoming meeting with TIFCO regarding the fidelity bond claim. This document clearly relates to the investigation into TIFCO's claim. With the exception of one sentence, this communication is not privileged because Thomas was acting as claims investigator, not legal advisor. The last sentence on page two, beginning with "While" and ending with "claim" should be redacted, however, as it arguably reflects legal advice or strategy, and in any event, is unrelated to the fidelity bond claim. Document 23 must be produced in redacted form.

Document 24 is a letter dated 4/12/96 from Lindsay to Thomas, enclosing communications between Lindsay and James Philcox of Sedgwick and requesting an estimate for an expense reserve. The latter request is not a request for legal advice. As noted earlier, communications regarding insurance reserves are not privileged communications. The remainder of the communication is merely a transmittal letter, which is also not privileged. Document 24

must be produced.

Document 25 is a letter from Lindsay to Thomas dated 4/10/96, transmitting a fax from Philcox of Sedgwick to Lindsay, together with Lindsay's response. The underlying communications between Lindsay and Sedgwick, CNA's underwriter, are not attorney-client communications. Nor does the fact that Lindsay transmitted those underlying communications to attorney Thomas make the communication privileged. Further, nothing in Lindsay's transmittal implicates a request for legal advice. Continental has failed to establish that Document 25 is a privileged attorney-client communication. Document 25 therefore must be produced.

Document 28 is a letter from Lindsay to Thomas dated 4/9/96 transmitting a fax from CNA's underwriter to Lindsay identifying the proper recipient for claim notifications. This is not a communication for the purpose of seeking legal advice, and thus, is not privileged. Document 28 must be produced.

Document 30 is a letter from Lindsay to Thomas dated 3/15/96 regarding a request from TIFCO's counsel for a waiver of conflict. This communication was for the purpose of seeking legal advice, and is therefore privileged. Document 30 need not be produced.

Document 31 is a letter from Lindsay to Thomas dated 2/20/96 identifying CNA's reinsurers and addressing the issue of notifying the reinsurers regarding approval or adjustment of TIFCO's fidelity bond claim. Settling claims and dealing with reinsurers is part of the ordinary course of business for an insurance company. This communication relates to the investigation into, and possible settlement of, TIFCO's fidelity bond claim. As such, it relates to Thomas' role as claims investigator rather than as legal advisor. Because Document 31 is not privileged, it must be produced.

13

Document 32 is an email from Lindsay to Thomas dated 2/16/96 regarding investigating TIFCO's fidelity bond claim. After reviewing the document, the court concludes that the client's communication relates to Thomas' role as both legal advisor and claim investigator, and that redaction is not possible because the issues are intertwined. Document 32 need not be produced.

Document 33 is a letter dated 2/15/96 from Lindsay to Thomas regarding commencing investigation into TIFCO's fidelity bond claim. This communication relates to Thomas' role as claims investigator, not as legal advisor. It is not privileged, and thus must be produced.

### B. Work Product Doctrine

There are two documents Continental claims constitute protected work product. Whether the work-product doctrine applies depends on federal law, even though this is a diversity case. *Dawson*, 901 F. Supp. at 1367. The work product doctrine protects from discovery materials that were prepared "in anticipation of litigation," subject to certain exceptions. *Id.* at 1368. The primary reason for creating the document at issue must have been "to aid in possible future litigation." *Dawson*, 901 F. Supp. at 1368; *Harper*, 138 F.R.D. at 659. Materials prepared in the ordinary course of a party's business, even if prepared at a time when litigation was reasonably anticipated, are not protected work product. *Harper*, 138 F.R.D. at 661.

In the insurance context, as many courts have recognized, "it is often difficult to determine whether documents prepared by an insurance company or its representatives are entitled to work-product protection because insurers are in the business of investigating and adjusting claims." *Sec. Exch. Comm'n v. Credit Bancorp, Ltd.*, No. 99 CIV 113951RWS, 2002 WL 59418, at *2 (S.D.N.Y. Jan. 16, 2002). As a result, absent specific evidence to the contrary, courts often presume that materials that are part of a factual evaluation or investigation into an

14

insured's claim—such as investigative reports—that were prepared by or for an insurer *prior* to a final coverage decision were prepared in the ordinary and routine course of the insurer's business. *Id.*; *Harper*, 138 F.R.D. at 663. To put it another way, unless the party opposing production comes forth with specific evidence to rebut the presumption, demonstrating there was a reasonable anticipation of litigation at the time the document was created, and that the primary reason for creating the document was to prepare for litigation, the work product doctrine will not apply. To make such a showing, the party typically must come forward with "affidavits or other evidence beyond the documents themselves." *Harper*, 138 F.R.D. at 665. In the case at bar, based on the court's review of the documents and the fact that Continental made its first settlement payment to TIFCO on November 22, 1996, the court presumes that Continental made its coverage decision (in the form of settlement) by November 1996.

Continental urges the court to find documents 14 and 15 protected by the work-product doctrine. Document 14, which is undated, consists of handwritten notes written by an unknown lawyer. The document appears to be notes relating to the claims investigation for TIFCO's fidelity bond claim. It is not evident from the face of the document that there was a reasonable anticipation of litigation at the time the document was created, or that primary reason for creating the document was to prepare for litigation. Nor has Continental provided any additional information that would allow the court to conclude that the work product doctrine is applicable. Continental has failed to meet its burden, so Document 14 must be produced.

Document 15 is a letter from Ehlers to Lindsay and Kuuskvere dated July 8, 1996. Continental asserts both attorney-client privilege and work product protection for this document. The letter is an enclosure letter for a set of indexed documents relating to TIFCO's fidelity bond

15

claim, and specifically, relating to the litigation between TIFCO and NATA. The enclosure letter itself merely describes the organization format for the enclosed documents. As such, it reflects no legal advice (or request for legal advice). Further, as explained earlier with respect to the Fidelity Claim Reports, Peterson & Ross's monitoring of the state court litigation seems inherently related to the firm's role as claims investigator/claims adjuster rather than as legal advisor. Document 15 is not a privileged attorney-client communication.

Additionally, Continental has not established that Document 15 is protected work product. The letter was written in July 1996, several months before TIFCO's fidelity claim was settled. The presumption, then, is that there was no anticipation of litigation at the time the letter was written. *Credit Bancorp, Ltd.*, 2002 WL 59418, at * 2; *Harper*, 138 F.R.D. at 663. Although that presumption is rebuttable, *Harper*, 138 F.R.D. at 663, Continental has not presented any evidence that the present litigation (or any other litigation) was reasonably anticipated at that time, let alone that the letter was prepared primarily in anticipation of such litigation. The court recognizes that at some point in time, the insurer's (and Peterson & Ross's) focus shifted "from mere claims evaluation to a strong anticipation of litigation." *Harper*, 138 F.R.D. at 669 (citation and internal quotation marks omitted). But Continental has provided no information as to when that shift might have occurred. Without such information, the court cannot find the work product doctrine applicable. Document 15 must be produced.

C. **Substantial Need**

In addition to challenging Continental's privilege assertions, Britamco argues in the alternative that it has demonstrated a substantial need for those documents. Britamco makes this argument without differentiating between attorney-client communications and work product. But

16

that distinction is crucial. The "substantial need" exception applies only to work product. As explained in Rule 26(b)(3), a party may obtain work product "only upon a showing that the party seeking discovery has substantial need of the materials and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). There is no such exception that allows a court to compel disclosure of otherwise privileged attorney-client communications.

Given that the court has not found any of the challenged documents to be protected by the work product doctrine, it is unnecessary to address Britamco's substantial need argument further. Nevertheless, the court notes that a party's conclusory argument that it has a substantial need for documents is unlikely to be sufficient to make the requisite showing under Rule 26(b)(3).

## III. Conclusion

Britamco's motion to compel is granted in part and denied in part, as set forth above. Continental has 14 days from the date of this order to produce documents in accordance with the rulings delineated in this opinion.

*Nan R. Nolan*

NAN R. NOLAN

United States Magistrate Judge

Dated: January 5, 2004